[No. 15002-2-I. Division One. October 13, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT CLARENCE GOGOLIN, *Appellant.*

*Paris K. Kallas* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rexanne Gibson, Deputy,* for respondent.

SCHOLFIELD, C.J.—Robert C. Gogolin appeals his conviction for second degree assault, assigning error to the trial court's refusal to give an instruction on self–defense, to the court's instruction on "knowledge" and to the court's admission of evidence of prior bad acts. We affirm.

### FACTS

Robert and Nancy Gogolin were divorced in April 1978. He was charged with assaulting his ex–wife on December 13, 1983. The incident took place while Robert was visiting Nancy at her apartment. Nancy testified that Robert grabbed her from behind, threatened to kill her and then struck her several times on the back of the head, apparently with the revolver she later saw him holding. Nancy told the court that she was able to persuade Robert not to carry out his threat and that he offered to take Nancy to the hospital with the explanation that she had fallen down the stairs. She refused.

Nancy was permitted to testify over objection about an incident that occurred a month prior to the alleged assault. She told the court that she had agreed to let Robert take their 6–year–old daughter, Janet, for a visit, with the understanding that he would bring her home that evening. Robert called later and asked Nancy to pick Janet up at his

apartment, stating that the headlights of his car were not working. Apparently, Robert was upset that Nancy was seeing another man. She testified that he blocked the door of his apartment after she arrived and refused to let her leave. Robert pushed her and spat in her face, and she had to escape from his apartment through a window. Robert released Janet, Nancy stated, only after Nancy threatened to call the police.

Robert denied assaulting his ex–wife. He testified that he and Nancy became involved in an argument while standing at the top of the stairway in her apartment. He stated that "[s]he came completely unglued[,] came at me swinging, and I was trying to get away from her." He raised his hands and "more or less tried to push her off." He did not know if he actually touched her, but she fell backward down the stairs, striking her head on the steel railing of the stairway.

Officer Britton, who investigated the alleged assault, stated that Robert told him that he and his ex–wife had begun pushing each other during an argument and that Robert pushed Nancy a bit too hard and she fell backward down the stairway. At trial, however, Robert denied telling the officer that he pushed Nancy and caused her to fall. He also denied having told Merry Potter, his girl friend, that he had hit Nancy.

Dr. Alyson Rieke treated Nancy Gogolin, and at trial described three wounds on the back of her head between 1 and 1¾ inches long. The edges of the wounds, she stated, were slightly bruised and ragged, as if caused by a blunt object with something of an edge. After looking at photographs of the staircase in Nancy's apartment, the doctor testified that, given the wounds' slight crescent shape and close proximity to one another, it was "hard to visualize" how they could have been sustained by a fall against the stair railing.

The jury found Robert guilty of second degree assault, and this appeal timely followed.

## Self–Defense

Robert first contends that the trial court denied him due process by refusing to give a self–defense instruction after he had presented some evidence of self–defense. We disagree.

The use of necessary force against another in self–defense is not unlawful. RCW 9A.16.020. Thus, a person charged with assault might admit having used force against another, but claim that he acted in self–defense. To be entitled to an instruction on self–defense, the defendant need only produce "any evidence" of self–defense, *State v. Adams,* 31 Wn. App. 393, 395, 641 P.2d 1207 (1982), and only where no credible evidence appears in the record to support such a claim is the trial court justified in denying a request for an instruction. *State v. McCullum,* 98 Wn.2d 484, 488, 656 P.2d 1064 (1983).

However, an instruction on an issue or theory not supported by the evidence is improper. *State v. Gibson,* 32 Wn. App. 217, 223, 646 P.2d 786 (1982); *see also State v. King,* 24 Wn. App. 495, 601 P.2d 982 (1979). For example, in *King,* the defendant assigned error to defense counsel's failure to request an instruction on self–defense. The court rejected the defendant's argument, noting that the evidence showed the defendant had lain in wait for his victim and had struck the first, and perhaps only blows. The court held the evidence simply did not support an instruction on self–defense. *King,* at 501.

Likewise, a self–defense instruction was not warranted by the evidence in the case at bar. Robert testified that he was trying to get away from Nancy and that he raised his hands to try to "push her off." However, he also stated that he did not know if he actually touched her. In fact, he denied telling Officer Britton afterward that he pushed Nancy too hard, causing her to fall, and also denied telling Merry Potter that he had hit Nancy.

In short, rather than testifying that he feared for his own safety and that he pushed Nancy down the stairs in self–defense, Robert claimed that she fell accidentally. The trial

court properly refused to instruct the jury on self–defense in the absence of any evidence to support it.

## PRIOR BAD ACTS

Robert's next contention is that the trial court erred by allowing Nancy to testify about the incident at his apartment without balancing on the record the probative value of the evidence against its prejudicial effect as required by ER 404(b).

The admissibility of evidence of prior bad acts is governed by ER 404(b), which states that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, the prosecution may not introduce evidence of prior acts for the purpose of suggesting that, because a defendant has a criminal character, it is more probable he committed the crime for which he is charged. As the rule indicates, however, evidence may be admissible if it is relevant for some other purpose, even though it also tends to show bad character. 5 K. Tegland, Wash. Prac. § 114 (2d ed. 1982).

The proper uses enumerated in the rule for such evidence are neither mutually exclusive nor collectively exhaustive. C. McCormick, *Evidence* § 190 (3d ed. 1984). Rather, "[a]ll competent evidence which is material and relevant to prove or disprove any issue cognizable by the trier of the facts" may be admissible. *State v. Cartwright,* 76 Wn.2d 259, 262, 456 P.2d 340 (1969).

ER 404(b) should be read in conjunction with ER 402 and 403. *State v. Saltarelli,* 98 Wn.2d 358, 361, 655 P.2d 697 (1982). To be admissible, evidence of prior crimes, wrongs or acts must be relevant to a material issue before the jury, *State v. Robtoy,* 98 Wn.2d 30, 42, 653 P.2d 284 (1982), and if relevant, its probative value must be shown to outweigh its potential for prejudice. *State v. Saltarelli, supra.*

Before exercising its discretion to admit evidence of prior bad acts, "the trial court should weigh the necessity for its admission against the prejudice that it may engender in the minds of the jury." *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981). The process of weighing the evidence and stating specific reasons for a decision ensures thoughtful consideration of the issue and facilitates effective appellate review. *State v. Jackson,* 102 Wn.2d 689, 693–94, 689 P.2d 76 (1984). The court stated in *Tharp,* "[w]ithout such balancing and a conscious determination made by the court on the record, the evidence is not properly admitted." *Tharp,* at 597.

■ However, what purpose is served by reversing a conviction where the questioned evidence is relevant and admissible? The trial court's failure to articulate its balancing process on the record does not make admissible evidence inadmissible. The principal reason advanced for putting the balancing process on the record is that a reviewing court needs it in order to decide whether the probative value of the evidence outweighed its prejudicial effect. *State v. Jackson, supra* at 694.

However, in those cases where, from the record as a whole, the reviewing court can decide issues of admissibility without the aid of an articulated balancing process on the record, the court should do so. In such cases, the trial court's failure to state the reasons for its ruling on the record becomes harmless error because it does not affect the admissibility of the evidence in question or impede effective appellate review of the trial court's decision. To send a case back for a retrial under such circumstances would be pointless. *State v. Tharp, supra* at 600.

In *State v. Jackson, supra,* the trial court "did not mention the possible prejudicial effect of the evidence [a prior assault], nor did it specify the purpose for which the evidence was admissible." *Jackson,* at 692. Nevertheless, the Supreme Court in that case was able to make determination from the record as a whole that the evidence of the prior assault was not admissible for any purpose, *Jackson,*

at 695, but that its admission into evidence was harmless error. *Jackson,* at 696.[1]

Likewise, the trial court in *State v. Thomas,* 35 Wn. App. 598, 668 P.2d 1294 (1983) failed to balance the admissibility of ER 404(b) evidence on the record. After noting the omission, the reviewing court went on to conduct its own balancing, determining that the probative value of the evidence was outweighed by its prejudicial effect, but that the admission of the evidence was harmless error. *Thomas,* at 607–09.

Evidentiary errors under ER 404(b) are not of constitutional magnitude. *State v. Jackson, supra* at 695. In this case, the evidence was relevant and probative since it tended to rebut Robert's defense of accident by demonstrating his history of hostility and abusive conduct toward Nancy. Thus, the evidence tended to make more probable the fact that her injuries resulted from an intentional assault rather than an accident. ER 401, 402.

Furthermore, even if the evidence of Robert's prior assaultive conduct had no relevancy, its admission would have been harmless error. Dr. Rieke's unrebutted expert testimony strongly tipped the balance in favor of the prosecution. She testified that it was unlikely that Nancy's injuries were caused by a fall against the stair railing. Her injuries, as Rieke described them, were consistent with those that would result from blows administered with the butt of a revolver. We cannot conclude that within reasonable probabilities, the outcome would have been different had the evidence not been admitted. *State v. Cunningham,* 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

---

[1]Recently, the Supreme Court reiterated the requirement that the admissibility of evidence under ER 404(b) be analyzed by the trial court on the record. *State v. Smith,* 106 Wn.2d 772, 725 P.2d 951 (1986). Again, however, the absence of such an analysis on the record in *Smith* did not impede the court's ability to examine the record on review and determine that evidence of the defendant's prior convictions was not relevant under ER 404(b). Accordingly, the court reversed the defendant's conviction, not because the trial court failed to record its reasons for admitting the evidence, but because the court concluded the improper evidence materially affected the outcome of the case.

THE TRIAL COURT'S INSTRUCTION ON KNOWLEDGE

Robert's final contention is entirely without merit. Relying upon *State v. Shipp*, 93 Wn.2d 510, 610 P.2d 1322 (1980), he assigns error to the second paragraph of the trial court's instruction 8 on "knowledge":

> If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted *but not required* to find that he or she acted with knowledge.

(Italics ours.) This instruction was taken directly from WPIC 10.02, which was revised to comply with *State v. Shipp*. WPIC 10.02 & Comment. *Shipp* held that the court must instruct the jury that it is permitted, *but not required*, to find that the defendant had knowledge, if it finds that the ordinary person would have had knowledge under the same circumstances. The revised instruction was found to meet that requirement in *State v. Davis*, 39 Wn. App. 916, 919–20, 696 P.2d 627 (1985).

The trial court's instruction was proper. We affirm.

PEKELIS, J., concurs.

WILLIAMS, J. (concurring)—I agree that the proposed instruction on self–defense was properly rejected there being no evidence to support it. As to the evidence of the prior episode involving Robert punching Nancy and spitting in her face, I am of the view that the outcome would have been the same had the evidence not been admitted, the proof of guilt being so strong. *State v. Jackson*, 102 Wn.2d 689, 689 P.2d 76 (1984).

I therefore concur.